| | |
|---|---|
| Buffey E. Klein (TX Bar 24032515 ) | Caleb T. Holzaepfel (admitted *pro hac vice*) |
| HUSCH BLACKWELL LLP | HUSCH BLACKWELL LLP |
| 1900 N. Pearl Street, Suite 1800 | 736 Georgia Avenue, Suite 300 |
| Dallas, TX 75201 | Chattanooga, TN 37402 |
| Telephone: (214) 999-6100 | Telephone: (423) 266-5500 |
| Facsimile: (214) 999-6170 | Facsimile: (423) 266-5499 |
| Email: buffey.klein@huschblackwell.com | Email: caleb.holzaepfel@huschblackwell.com |

*Proposed Attorneys for the Official Committee of Unsecured Creditors of Electrotek Corporation*

## THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ELECTROTEK CORPORATION, | ) | Case No. 21-30409-MVL-11 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ELECTROTEK CORPORATION'S RESPONSE TO DEBTOR'S EMERGENCY MOTION FOR ORDER ENJOINING COUNSEL FOR THE UNSECURED CREDITORS' COMMITTEE FROM ENGAGING IN NEGATIVE SOLICITATION AS TO DEBTOR'S PLAN AND OTHER RELIEF

The Official Committee of Unsecured Creditors of Electrotek Corporation (the "Committee"), by and through its proposed counsel, hereby responds to Debtor's *Emergency Motion for Order Enjoining Counsel for the Unsecured Creditors' Committee from Engaging in Negative Solicitation as to Debtor's Plan and Other Relief* (the "Objection") [Dkt. No. 81] filed on August 23, 2021, as follows:

### PRELIMINARY STATEMENT

The Committee is well within its rights under the Bankruptcy Code and applicable law to make recommendations to its constituency regarding Electrotek Corporation's (the "Debtor") Chapter 11 Plan of Reorganization and Disclosure Statement that has been approved for solicitation by this Court. In fact, given that (i) the Plan was on file prior to the Committee's

1

appointment, (ii) the Debtor has failed to provide necessary information for the Committee to evaluate the Plan, and (iii) the proposed Plan seeks to pay unsecured creditors a ten percent (10%) pro rata payment, while restoring equity in full to ownership – the Committee believes that such a recommendation was reasonable, necessary, and in-line with its fiduciary duty to its constituency.  What underpins Debtor's Motion appears to be frustration that its attempts to push through confirmation of the Plan that violates the absolute priority rule met with the Committee's (completely unsurprising) opposition.

Debtor continues to file frivolous motions and objections – and continues to press forward with a Plan that is patently unconfirmable.  In fact, this Motion requests to designate votes as a moot point, as the Plan is unconfirmable regardless of the outcome of voting. The Committee will demonstrate the same in a separately filed objection to the Plan.

Debtor is only increasing estate expenses when it should be focusing on crafting a confirmable Plan with the Committee's cooperation.  The Committee is hopeful that the parties can begin to work towards a confirmable Chapter 11 Plan that is truly in the best interests of the estate's creditors – not a Plan crafted in the best interests of Debtor's ownership.  In the interim, this Court should deny Debtor's Motion.

## **JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are 11 U.S.C. §§ 1191 and 1129.

4.  On May 8, 2021 (the "Petition Date"), Electrotek, Inc. (the "Debtor"), as debtor and debtor-in-possession in the above- referenced Chapter 11 case (the "Bankruptcy Case"), filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code, designated the Bankruptcy Case under Subchapter V.

5.  Since the Petition Date, upon information and belief, the Debtor continues to manage and operate their businesses as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6.  Debtor amended its Voluntary Chapter 11 Petition on April 15, 2021 to remove the Subchapter V designation.

7.  On July 8, 2021, the United States Trustee for the Northern District of Texas (the "UST") organized and appointed the Committee, which was subsequently amended on July 27, 2021, to consist of the following members: (i) Sid Grinker Restoration, Inc.; (ii) Taiyo America, Inc.; (iii) Uyemura International Corp., and (iv) Hagen Decorators Inc.  Jeff Oscarson, CFO of Sid Grinker Restoration, Inc., was selected by the Committee as the Chair of the Committee.

8.  On July 13, 2021, the Committee selected, subject to the Court's approval, Husch Blackwell LLP ("Husch") as its counsel.

9.  On April 26, 2021, Debtor filed its Disclosure Statement [Dkt. No. 28] (the "Disclosure Statement").

10. On April 26, 2021, Debtor filed its Chapter 11 Plan of Reorganization [Dkt. No. 27] (the "Plan").

**RESPONSE**

11. In its Motion, Debtor seeks (i) to enjoin the Committee from "soliciting" negative votes, (ii) sanctions against Committee's counsel under Rule 9011, and (iii) to persuade the Court to use its discretion and strike any negative votes on the basis of the Committee's "solicitation" pursuant to Section 1126(e) of the Bankruptcy Code. Each of the Debtor's requests fail as a matter of law and will be addressed in turn.

12. Debtor takes issue with an email the Committee sent to **its own constituency** on August 20, 2021 (the "Recommendation Email") recommending that general unsecured creditors vote against the Plan as filed. *See* Motion ¶ 7.

13. While the Debtor's exact legal argument is not clearly drawn, Debtor apparently believes that the Recommendation Email was a "solicitation" under Section 1125(b) of the Bankruptcy Code that was in "bad faith" – and, therefore, implicates the Court's discretionary powers to "designate any entity" pursuant to Section 1126(e) of the Bankruptcy Court. Debtor attempts to demonstrate bad faith by arguing the Recommendation Email contains false and misleading statements.

14. As a threshold issue, the Recommendation Email was **not** a solicitation under Section 1125(b) of the Bankruptcy Code.

15. Moreover even if the Recommendation Email was considered a solicitation, the Recommendation Email was sent in good faith and contains **no language that even approaches a false or misleading statement**. Debtor's attempts to argue otherwise have no basis in fact or law.

16. While the Committee asserts that the Recommendation Email does not fall under the narrow definition of a Section 1125(b) "solicitation," such a distinction is likely without

4

consequence as (i) the Bankruptcy Code expressly contemplates a Committee's power to make recommendations to its constituency regarding a formulated Plan, and (ii) this Court is clear that Court authorization is not required for post-disclosure statement approval of a solicitation. Moreover, the Recommendation Email was sent in good faith to the Committee's constituency with accurate information and a clear recommendation.

I. *It is a Core Function of an Official Committee of Unsecured Creditors to Advise Its Constituency as to a Formulated Plan.*

17. Section 1103(c) of the Bankruptcy Code states as follows:

> **(c)** A committee appointed under section 1102 of this title may—
>
> **(3)** participate in the formulation of a plan, **advise those represented by such committee of such committee's determinations as to any plan formulated**, and collect and file with the court acceptances or rejections of a plan;

11 U.S.C. § 1103(c) (emphasis added).

18. Indeed, it is a core function of the Committee to advise its constituency regarding a formulated Plan. "A representative of a creditors' committee is authorized to consult with those creditors represented by the committee and to apprise those creditors of the committee's recommendations as to a plan of reorganization. 11 U.S.C. § 1103 (c)(3)." *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1163 (5th Cir. 1988).

19. The Plan was filed on April 26, 2021, over two months before the Committee was appointed. Debtor continues to press towards confirmation, against the Committee's recommendations regarding the legality of the Plan under Sections 1123 and 1129 of the Bankruptcy Code, and in the face of Debtor's failure to provide fulsome financial information to the Committee.

20. The Committee was well within its rights to send the Recommendation Email to advise its constituency that it recommended a vote rejecting the Plan.

II. **The Recommendation Email Was Not a Solicitation Pursuant to Section 1125(b) of the Bankruptcy Code. In the Alternative, Even If the Recommendation Email Was a Solicitation Under Section 1125(b) of the Bankruptcy Code, Solicitation Following the Court's Approval of a Disclosure Statement Approval Is Expressly Permitted.**

21. The terms "solicit" and "solicitation," as used in Section 1125(b) of the Bankruptcy Code, "must be interpreted very narrowly to refer only to a specific request for an official vote either accepting or rejecting a plan of reorganization." *In re Snyder*, 51 B.R. 432, 437 (Bankr. D. Utah 1985); *In re Heritage Org., L.L.C.*, 376 B.R. 783, 792 (Bankr. N.D. Tex. 2007) ("the Court would align itself with those courts that have concluded that the term 'solicitation' as used in § 1125(b) should be viewed 'very narrowly to refer only to a specific request for an official vote either accepting or rejecting a plan of reorganization.'") (internal quotations omitted).

22. The Recommendation Email does not contain a "request" to vote – but rather includes a recommendation from the Committee to vote against the Plan in line with the Committee's powers enumerated in Section 1103(c) of the Bankruptcy Code. *See* Motion ¶ 7. As the term solicitation must be defined "very narrowly" this is not a distinction without difference. The plain language of the Recommendation Email should speak for itself: "The Committee is recommending...." *See id.*

23. For example, in *In re Sandia Resorts, Inc.*, the Court held that an email asking creditors for "help in voting," but that did not contain "a clear request for a vote to reject," did not fit the narrow definition of solicitation. *See In re Sandia Resorts, Inc.*, 2016 WL 6879249, at *7 (Bankr. D.N.M. Nov. 4, 2016).

24. To conflate the Committee's power to advise its constituency as to a formulated Plan under Section 1103(c) with solicitation under Section 1125(b) of the Bankruptcy Code would chill a core purpose of the Committee's appointment. As such, this Court should deny the Motion.

25. However, even if this Court were to determine that the Recommendation Email falls within the parameters of a "solicitation" pursuant to Section 1125(b) of the Bankruptcy Code, this Court has already determined that the Committee (and any additional party) can send out negative solicitations after a disclosure statement has been approved. *See In re Mirant Corp.*, 334 B.R. 787, 792 (Bankr. N.D. Tex. 2005).

26. The *Mirant* Court, in following the Third Circuit, found that an equity committee member was permitted to solicit negative votes under Section 1125(b) of the Bankruptcy Code and states:

> The court has reviewed applicable case law and concurs generally with [committee member] that Code § 1125 does not prohibit solicitation of rejections of a plan once a disclosure statement has been approved. The Court of Appeals for the Third Circuit so held in *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94 (3rd Cir. 1988), and cases decided since *Century Glove* have largely adopted its reasoning. *See, e.g., In re California Fidelity, Inc.*, 198 B.R. 567 (9th Cir. BAP 1996); *In re Apex Oil Co.*, 111 B.R. 245, 249–250 (Bankr. E.D. Mo. 1990); *In re Temple Retirement Cmty.*, 80 B.R. 367, 368 (Bankr. W.D. Tex. 1987).

*See Mirant Corp.*, 334 B.R. at, 792.

27. The Disclosure Statement was approved on June 23, 2021. The Committee would have been well within its rights to "solicit" negative votes on August 20, 2021. As such, no solicitation without Court authority could have occurred.

### III. The Recommendation Email Contains Only Accurate Statements.

28. Debtor's Motion requests that this Court utilize its discretion under Section 1126(e) of the Bankruptcy Code to designate negative votes as improperly cast ballots. The Court can only choose to utilize its Section 1126(e) discretion if (i) the Recommendation Email was a solicitation (as discussed *supra*, it was not), and (ii) if the Recommendation Email was sent in "bad faith." 11 U.S.C. § 1126(e).

29. A bankruptcy court's determination of the presence or absence of "good faith" in the context of Section 1126(e) of the Bankruptcy Code "is based on the totality of the circumstances and is reviewed for clear error." *Zentek GBV Fund IV v. Vesper*, 19 F. App'x 238, 246 (6th Cir. 2001).

30. To arrive at "bad faith," Debtor inaccurately alleges that the Recommendation Email's following two lines are "false or misleading":

   i. Although the Committee's investigation continues, the Committee believes that Electrotek Corporation should increase the proposed distribution to unsecured creditors under an approvable Plan based on its current assets and liabilities; and

   ii. The Plan seeks to restore all equity interests to current ownership. The Committee takes the position that the restoration of equity interests to ownership is not permitted under the Bankruptcy Code if unsecured creditors are not paid their allowed claims in full unless the class of unsecured creditors votes to accept the proposed Plan.

*See* Motion ¶ 7.

31. **The Recommendation Email contains no false or misleading statements and was not sent with any intent to deceive the Committee's own constituency.**[1]

---

[1] As a practical matter, the Committee fails to understand how its negative recommendation could be found to be "bad faith" or with the "intent to deceive." The Committee believes the Debtor can do better by its unsecured creditors under a reformulated Chapter 11 plan; it relayed exactly that fact in the Recommendation Email. The Committee's goal is seeing a case outcome that is in the best interests of its constituency. To "deceive" its

8

32. Debtor cites inapposite case law in its Motion in which courts found Section 1125(b) solicitations to actually contain false or misleading information. *See* Motion ¶ 10.

33. Both Subparagraphs (i) and (ii) are hedged in language to make clear to the constituency that the recommendation is based on the Committee's opinion, that is, the "Committee believes" and the "The Committee takes the position." *See* Motion ¶ 7. As the Committee does have such beliefs and does take such positions – it defies logic to argue that the same statements are "false" or "misleading." The Recommendation Email was the Committee simply exercising its fiduciary duty to its constituency to make a recommendation on voting – one of its core functions contemplated under the Bankruptcy Code. *See* 11 U.S.C. § 1103(c); *see also In re Cajun Elec. Power Co-op., Inc.*, 230 B.R. 715, 743 (Bankr. M.D. La. 1999) ("The action of the UCC in making a recommendation to its constituents does not represent a lack of good faith. . . . [T]he UCC was merely fulfilling its obligation to advise its members of the treatment under each plan and make recommendations accordingly.")

34. However, even taking the position that Subparagraphs (i) and (ii) of the Recommendation Email were "statements of facts" – each statement is objectively true.

35. Subparagraph (i) indicates two things: (1) that the Committee's investigation into the Debtor continues; and (2) that the Committee *believes* that Debtor should increase its distribution to unsecured creditors based on what the Committee *believes* Debtor's current assets and liabilities to be.

---

constituency would be for the Committee to be working for a different goal – and even the Debtor does not allege that the Committee was not working in the best interests of its constituency in sending the Recommendation Email.

36. The first is true – the Committee's investigation into the Debtor's books and records continues. To date, Debtor has failed to provide the Committee with, among other information[2]:

    a. Backup for the scheduled Priority Wage Claim;

    b. Evidence of insurance;

    c. Any information related to security of $8.4 million in Alleged Secured Debt;

    d. Any information related to the payment to Debtor of $4.9 million of the Alleged Secured Debt;

    e. Post-Petition Payments tied to Debtor Invoices to establish value of 11 U.S.C. § 549 claims;

    f. Historic payments by Debtors tied to Invoices to assist in establishing a value of 11 U.S.C. §§ 547–548 claims; and

    g. Documents and explanation relating to the scheduled Kinwong Electronic claim that makes up over half of the scheduled unsecured creditor pool – but as to which a proof of claim was not filed.

37. The second statement in Subparagraph (i) is also true – the Committee believes that Debtor should increase its proposed distribution. Among other things, the proposed Plan:

    a. Fails to provide any value to unsecured creditors in the over $3.5 million in pre-petition avoidable transfers;

    b. Presumes unproven security by equity ownership of $8.4 million in alleged secured debt; and

    c. Violates the absolute priority rule by restoring equity to ownership with no new consideration contribution by equity ownership while paying unsecured creditors only ten percent (10%) of their claim.

*See generally* Chapter 11 Plan [Dkt No. 27]; Disclosure Statement [Dkt No. 28], Art. IV.B.

---

[2] Ironically, Debtor complains that Subparagraph (i) is "misleading" as it "infer [sic] to the unsecured creditors that the Debtor is hiding, has intentionally undervalued or omitted assets or liabilities." *See* Motion ¶ 22. While, Subparagraph (i) makes no such inference, in part, Debtor's failure to produce information regarding the alleged secured debt does lead to the reasonable Committee's belief that Debtor should increase its proposed distribution.

38. Under such circumstances, the Committee reasonably believes that the Debtor should increase its proposed distribution under a newly formulated Chapter 11 plan (hopefully a plan formulated with Committee input). The totality of the circumstances cannot indicate anything but a good faith attempt by the Committee to protect its constituency from a plan which the Committee believes is not in the best interests of Debtor's unsecured creditors.

39. Moving to the second alleged "statement," Subparagraph (ii) provides a brief recitation of the absolute priority rule codified in Section 1129(b)(2)(B)(ii) of the Bankruptcy Code – with language indicating to its constituency that it is the Committee's position that this Plan violates the absolute priority rule.

40. The Plan does violate the absolute priority rule. *See* Plan, Art. V.B.

41. Given that the absolute priority can only be overcome by a class vote in favor of the Plan, it is hard to imagine of a better reason for the Committee to recommend a negative vote. *See In re ADPT DFW Holdings LLC*, 577 B.R. 232, 250–251 (Bankr. N.D. Tex. 2017).

42. Debtor apparently takes no issue with the truth of the language in Subparagraph (ii) – but believes that the statement is "false and misleading as it fails to provide unsecured creditors with the fact that the equity owners have agreed to be subordinated in payment." *See* Motion ¶ 23.

43. The Debtor has solicited its Plan and Disclosure Statement. The Debtor is not entitled to weigh-in on the Committee's recommendations to its constituency or entitled to explain why Debtor believes its violation of the absolute priority rule is "fair" to its unsecured creditors.

44. Moreover, it is unclear what Debtor is substantively arguing here. The facts of the Plan are as follows: The Plan provides that Class 3 equity ownership's secured claims are

retained with 4.25% per annum interest. *See* Plan, Art. V.B. No unsecured claim is scheduled by Debtor for Class 5 (Allowed Insider Claims). *See* Schedule A/B [Dkt No. 21]. No equity ownership filed a proof of claim. *See* Claims Register. Accordingly, what "payment" is equity ownership subordinating? Even if there is an unsecured deficiency portion to Class 3's claim, there is no suggestion that equity ownership of the remaining 70% of the Debtor (Class 3 only owns 30% of Debtor) is subordinating any payment to the general unsecured creditors. *See* Plan, Art. V.B; *see* Statement of Financial Affairs [Dkt. No. 22], Part 13, No. 28.

45. Finally, Debtor suggests that the Committee's recommendation that its constituency reject the proposed Plan is "suggesting an alternative plan" and "attempting an end run to filing their own plan". *See* Motion ¶¶ 26–27. Debtor's statements here do not merit time and comment except to say that it is clear that the Committee neither directly nor indirectly suggests an alternative plan exists in the Recommendation Email. *See* Motion ¶ 7.

**IV. Debtor's Remaining Requests Should Be Denied as Failing to Comply with Applicable Law.**

46. Debtor seeks sanctions against the Committee under Rule 9011. *See* Motion ¶ 9.

47. Federal Rules of Bankruptcy Procedure 9011requires, in part, that:

> (A) *By Motion*. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

Fed. R. Bankr. P. 9011(c)(1)(A).

48. First, the Motion for sanctions was not brought in a separate motion. Second, the Motion was not served under Rule 7004. Third, Debtor did not present the Motion to the Committee twenty-one (21) days prior to the Motion being filed. Indeed, the Recommendation Email was only sent on August 20, 2021.

49. Notwithstanding and reserving all rights to its substantive arguments, the Committee would request that this Court deny the request for sanctions as it fails to comply with Federal Rules of Bankruptcy Procedure 9011(c).

50. Moreover, Debtor requests that this Court enjoin the Committee from "unlawful solicitation" purportedly under 11 U.S.C. § 105. *See* Motion ¶ 8.

51. As the Supreme Court instructed in *Law v. Siegel*, "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" 571 U.S. 415, 421 (2014) (citing 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], p. 105–06 (16th ed. 2013)).

52. As discussed *supra*, the Committee can advise its constituency under Section 1103(c) of the Bankruptcy Code. Further, the Committee can solicit negative vote (if it wishes) under Section 1125(b) of the Bankruptcy Code. Section 105(a) cannot be used to override these enumerated powers. The Fifth Circuit is in accord. *See In re Mirant Corp.*, 378 F.3d 511, 523 (5th Cir. 2004) ("A court's powers under § 105(a) are not unlimited as that section only 'authorizes bankruptcy courts to fashion such orders as are necessary to further the substantive provisions of the Code,' and does not permit those courts to 'act as roving commissions to do equity.'" (*Quoting In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995)).

53. This Court should deny Debtor's request to enjoin the Committee.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that this Court deny the Debtor's Emergency Motion for Order Enjoining Counsel for the Unsecured Creditors' Committee from Engaging in Negative Solicitation as to Debtor's Plan and Other Relief, and grant other relief to Committee as it deems necessary and appropriate.

Dated: August 26, 2021.

                                                     Respectfully Submitted,

                                                     **HUSCH BLACKWELL LLP**

By:   */s/ Buffey E. Klein*
        Buffey E. Klein
        Texas State Bar No. 24032515
        1900 N. Pearl, Suite 1800
        Dallas, Texas 75201
        (214) 999-6100
        (214) 999-6170 (fax)
        buffey.klein@huschblackwell.com

        Caleb T. Holzaepfel (admitted *pro hac vice*)
        736 Georgia Avenue, Suite 300
        Chattanooga, TN 37402
        (423) 266-5500
        (423) 266-5499 (fax)
        caleb.holzaepfel@huschblackwell.com

        *Proposed Attorneys for the Official*
        *Committee of Unsecured Creditors*
        *of Electrotek Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served electronically on all creditors, parties in interest or their attorneys of record, according to the Court's notice of electronic filing on August 26, 2021.

By: */s/ Caleb T. Holzaepfel*
Caleb T. Holzaepfel