Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ELECTROTEK CORPORATION,** | § | **CASE NO. 21-30409-MVL** |
| | § | **CHAPTER 11** |
| Debtor. | § | |

**OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ELECTROTEK CORPORATION TO APPOINT CHAPTER 11 TRUSTEE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Electrotek Corporation, Debtor in the above entitled and numbered case ("Debtor"), and files this its *Objection to Motion of The Official Committee of Unsecured Creditors of Electrotek Corporation to Appoint Chapter 11 Trustee* (the "**Objection**"), and states as follows:

**RESPONSES TO INTRODUCTION**

1. Debtor denies the allegations in the introductory paragraphs of the *Motion of The Official Committee of Unsecured Creditors of Electrotek Corporation to Appoint Chapter 11 Trustee* (the "**Motion**") as follows:

2. Debtor denies the allegations in the first paragraph. The Debtor's recent financial statements may appear to reflect a comfortable monthly profit to The Official Committee of Unsecured Creditors (the "**Committee**"), but this is because of the recent forgiveness of a $1M

PIP loan from the SBA. However, the Debtor may only use these funds for payroll expenses to maintain the forgiveness feature of the loan and therefore the "comfortable monthly profit" does not exist. The Debtor has made every effort to propose a Plan that uses the Debtor's resources to pay creditors as much as possible and allows it to remain in business for the future benefit of its employees and creditors, with whom the Debtor will maintain relationships in the future.

3. Debtor further denies the allegations of the amount of secured debt as a little over $1 Million Dollars. The secured claims of DJ Barbaria have been documented and appear to be valid as the Debtor conducted a review of the promissory notes, security agreements and UCC-1 filings supporting these claims. The Committee only recently objected to these claims without explanation for its delay in doing so.

4. Debtor denies the Committee's allegations about dishonesty and obstruction. To the contrary and as admitted by the Committee, Debtor has produced thousands of records in response to various requests from the Committee, including evidence of Mr. Barbaria's claims.

5. Debtor denies it is abdicating its fiduciary duties to its creditors by pressing forward with a Plan that provides only ten (10) percent return. The Debtor's liquidation analysis produced to the Committee and filed with the Court provides the basis for the return to unsecured creditors. The Debtor's representative Mike Swerdlow testified at the confirmation hearing on October 20, 2021, about the value of the Debtor's assets and the significant financial contributions Mr. Barbaria has made to the Debtor and will continue to make to ensure a successful reorganization.

6. The Debtor denies there are misstatements or inaccuracies in its schedules, statement of financial affairs and Plan. In the event there are, the Debtor has taken measures to ensure full and accurate disclosure. Yet, the Debtor is a 30+ year old company. Current management inherited a lot of debt that it has had to sort through. There are over 100 creditors

listed on the Schedules and Statement of Financial Affairs. The Debtor is actively reviewing its schedules to correct any omissions that may exist.

7. Regarding the allegations that the Debtor failed to file a single first day motion, the Debtor's only secured creditor is its owner Mr. Barbaria, who has consented to the use of cash collateral to pay operating expenses. The Court has resolved the issue of pre-petition wages by its *Order Granting Motion Nunc Pro Tunc to Pay Pre-Petition Payroll* entered September 22, 2021 (Dkt. 110).

8. Debtor denies that it has failed to provide value to more than $3.5M in avoidance actions. The Debtor's Plan proposes to appoint Mr. Christopher Moser as a "Plan Agent" for the purpose of investigating these transfers to determine whether they are avoidable, and if so, to prosecute any such preferential transfers after confirmation of the Plan. Because Mr. Moser is an impartial third party known to the Court with extensive experience in avoidable transfer analysis and litigation, this resolves the Committee's objection.

9. The Debtor denies it has understated its cash by $1.2M. As set forth above, the Debtor's recent financial statements reflect the recent forgiveness of a $1M PIP loan from the Small Business Administration and is not a result of understating cash.

10. As set forth below no cause exists to appoint a Chapter 11 Trustee in this case.

## JURISDICTION AND VENUE

11. The Debtor admits the allegations in paragraphs 1-2.

12. Debtor admits the allegations in paragraph 3 insofar as the statutes speak for themselves but denies they create a basis for relief as applied.

## BACKGROUND

13. Debtor admits the allegations in paragraphs 4-6.

14. Debtor admits in part the allegations in paragraph 7. However, Debtor is without sufficient knowledge to admit or deny the Committee's selection of counsel process and therefore denies the remainder.

15. Debtor is without knowledge to admit or deny the allegations in paragraph 8 and therefore denies.

16. Debtor admits in part the allegations in paragraphs 9-12. The Debtor is in the process of revising its Schedules regarding the amount of Mr. Barbaria's claim. Further, the "Receivable from Owner" has been further explained as set forth in the Debtor's First Modification to Debtor's Plan of Reorganization (Dkt. 123), as too, the priority wage claims.

17. Debtor admits the allegations in paragraphs 13-14.

18. Debtor denies the allegations in paragraph 15 and states that the Plan as modified speaks for itself.

19. Debtor admits the allegations in paragraphs 16-17.

20. Debtor admits in part the allegations in paragraph 18. The Debtor relayed to the Court at the July 26, 2021, hearing that it had received an initial request for documents from the Committee's counsel represented Sig Grinker Restoration, Inc. The Debtor relayed to the Court that it then received another request for documents on July 21, 2021, a week prior to the confirmation hearing. The Debtor informed the Court that it had documents to produce and did not want to do so piecemeal.

21. Debtor denies the allegations in paragraphs 19-23. The Debtor has produced the documents. The Committee has only recently filed an objection to Mr. Barbaria's claim and that will be resolved by the Court.

**ARGUMENT**

22. The allegations in paragraphs 24-28 are conclusions of law to which no response is needed. To the extent a response is required, Debtor denies the Committee is entitled to relief under the law.

23. No cause exists under Section 1104(a)(1) to appoint a Chapter 11 Trustee as there has been no clear and convincing evidence of fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause.

24. No cause exists under Section 1104(a)(2) to appoint a Chapter 11 Trustee because the cost and delay of such appointment is not in the interests of creditors, any equity security holders, and other interests of the estate.

25. The appointment of a Chapter 11 trustee is an extraordinary remedy that requires a movant to meet their burden of proof by clear and convincing evidence. *In re NRA of Am.* 628 B.R. 262, 283 (Bankr. N.D. Tex. 2021); *In re Ford Steel LLC,* 629 B.R. 871, 890 (Bankr. S.D. Tex. 2021).

26. The Committee points to cases in which acrimony between the debtor and creditor supports the appointment of a Trustee Section 1104(a)(1). However, the instant facts do not rise to the acrimony found in the cases cited by the Committee. For instance, in *In re The Bible Speaks,* the Court found that acrimony between a creditor who was defrauded by the Debtor to the tune of over $6.5M was cause to appoint a Trustee. 74 B.R. 511 (Bankr. D. Mass. 1987). In *The Bible Speaks*, the creditor committee filed a plan which proposed that the debtor's asset would be placed in a trust and leased back to the Debtor pending final resolution of the defrauded creditor's claim. *Id*. at 513. The Court found that consummation of the plan would require a mediator to objectively analyze the costs of appeal of the allowance of the defrauded creditor's claim, and cooperation

between the committee and the debtor, which would be unlikely without the presence of a mediator. *Id*.

27. In *In re Marvel Entertainment*, the Court was faced with unique circumstances that rebutted the strong presumption against appointing an outside trustee where the creditor constituents acquired the Debtor, and at the time the motion to appoint a trustee had been filed, those creditors had been running the Debtor's business for a mere 6 months and were unable to resolve conflicts with the estate creditors. 140 F.3d 463, 471 (3d. Cir. 1998).

28. In *In re Cajun Electric* the debtor- in- possession board members had extensive conflicts because they were themselves managers or members of the debtor's individual member utility companies. *In re Cajun Electric*, 74 F.3d 599, 600 (5th. Cir. 1996) (adopting on rehearing the opinion of dissent in 69 F.3d at 751), cert. denied 117 S.Ct. 51 (1996)). The debtor-in-possession through these member/managers had to decide whether to appeal an agency order seeking to maintain high rates charged to the individual member companies and thus to better enable the debtor in possession to meet its debt obligations to its creditors or to take no action and charge less to their individual companies. *Cajun Electric* 69 F.3d at 746, 747 (5th. Cir. 1995). The Fifth Circuit upheld the district court's findings that there were conflicts of interests to such an extent that the appointment of a trustee was the only effective way to pursue reorganization.

29. In this instance, while the Debtor does have concerns that the Committee's actions are not in the best interests of the creditors, none of the acrimony exists here sufficient to warrant appointment of a trustee. There is certainly no clear and convincing evidence of fraud, or a large fraud claim that exists as in, *In re The Bible Speaks*. There are no competing plans, and there is no creditor in charge of the Debtor, unfamiliar with the Debtor's business as in, *In re Marvel Entertainment*. In fact, the Debtor's Plan proposes to appoint Mr. Christopher Moser as a "Plan

Agent" as an impartial third party to resolve the main source of contention between the Debtor and the Committee which is the value and pursuit of Chapter 5 causes of action.

30. The allegations in paragraphs 29-30 are conclusions of law to which no response is needed. To the extent a response is required, Debtor denies the Committee is entitled to relief under the law. Courts consider the following factors when determining whether relief under Section 1104 (a)(2) is warranted: (1) the trustworthiness of the debtor; (2) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence – or lack thereof – of the business community and of creditors in the present management; and (4) the benefits derived by the appointment of a trustee; balanced against the cost of an appointment." *In re Ford Steel LLC*, 629 B.R. at 890.

31. These factors are flexible and ultimately the Court should consider the practical realities, necessities of the case, and the totality of the circumstances. *Id*. The type of debtor at issue is an important factor in determining whether a Trustee should be appointed.

32. In *In re NRA*, Judge Hale noted that NRA, due to its political and polarizing missing, did not have the type of business where it would be "easy to find a suitable individual to serve in the role of trustee or examiner with expanded powers." The Court found that the NRA made progress in its "course correction" and that "Whether it is yet complete or not, there has been more disclosure and self-reporting." 628 B.R. 262 at 282- 283.

33. Similarly, in *In re Ford Steel LLC*, the Court found the Trustee's reason to appoint a trustee moot when the Debtor filed the application to employ the broker the Trustee complained had not been filed. The Court also found the support of two of the debtor's creditors demonstrated their confidence in the debtor's management and that, coupled with the resolution of the only basis

for requesting a trustee, meant that that the benefits of appointing a trustee did not outweigh the costs

34. Like the *NRA* and *Ford Steel LLC* cases, there are factors militating against the appointment of a Trustee – (1) the uniqueness of the Debtor's business; (2) the course correction of the Debtor; (3) the Debtor's resolution of the Committee issues with a Plan Agent; and (4) the support from its unsecured creditors.

35. The Debtor is in a unique industry of electroplating. The Trustee has not identified who would be qualified to run the business. Debtor is in compliance with its fiduciary obligations, its MORs are filed, and its Plan is ready for confirmation, it has produced all documents to the Committee, its schedules are amended, and it achieved approval of its payroll motion.

36. Debtor's Plan enjoys overwhelming support from its unsecured creditors showing their approval of current management.

37. Debtor denies the allegations in paragraphs 31-32. There has been no dishonesty, incompetence, and/or gross mismanagement of the affairs of the Debtor. As set forth above the Debtor has reviewed and produced documents regarding the secured debt and the priority wage claims. The Debtor has not failed to account for its assets of liabilities and to the contrary has provided full disclosure to the Committee. As set forth above, the Debtor's sole secured creditor is Mr. Barbaria who has consented to the use of cash collateral to pay operating expenses.

38. Debtor denies the allegations regarding acrimony regarding the parties as set forth in paragraph 33, for the reasons set forth above.

39. Debtor admits the Schedules set forth the secured claim as alleged in paragraph 34 of the Motion. The Debtor has made full disclosure of Mr. Barbaria's claim in its Plan, as modified

and in its MOR and is in the process of revising its Schedules regarding the amount of Mr. Barbaria's claims.

40. Debtor denies the allegations in paragraph 35. Extensive documentation of the secured debt including Notes, Security Agreements, UCC-1 filings, and bank statements has been provided to the Committee.

41. Debtor denies the allegations in paragraph 36 save to admit the MOR for July 2021 reflects that $6.5million is a secured debt owed to Mr. Babaria. The Debtor is in the process of revising its Schedules regarding the amount of Mr. Barbaria's claim.

42. Debtor denies the allegations in paragraph 37. The Plan provides for payment of $6.5M secured after the payment of other creditors.

43. Debtor admits the allegations in paragraph 38 insofar as the Schedules speak for themselves.

44. Debtor denies the allegations in paragraphs 39-43. The Debtor explained at the hearing to approve the payment of pre-petition wages that the small discrepancy in the $128,014.12 and the $130,080.06 was based on actual payroll versus fees charged by the payroll processing service. Further, Debtor is still liable for accrued vacation and benefits to employees and such priority amounts are properly scheduled by the Debtor. Documentation requested by the Committee pertaining to this request has been provided.

45. Debtor denies the allegations in paragraph 44.

46. Debtor denies the allegations in paragraph 45. The cash on hand was as of the Petition Date as set forth in the Disclosure Statement.

47. Debtor denies the characterization of the Debtor's assets alleged in paragraph 46. Transactions related to the PPP Loan is explained in the Plan as modified. The Debtor appears to

have higher cash on hand due to the forgiveness of $1M of the PPP Loan in September 2021. The Debtor has accurately reported its cash balance in its Schedules, Disclosure Statement and in its MORs.

48. The allegations set forth in paragraph 47 contains legal conclusions to which no response is required. To the extent a response is required Debtor denies the application of the law would require the appointment of a Trustee.

49. Debtor denies the allegations in paragraphs 48-49. Transactions related to the PPP Loan are explained in the Plan as modified and Mr. Barbaria has provided documentation and explained that the movement of these funds was to avoid garnishment by overly aggressive creditors after which the money was put back in the account.

50. Debtor denies the allegations in paragraphs 50-52. As set forth above, Debtor has consent to use cash collateral from its sole secured creditor Mr. Barbaria to pay post-petition operating expenses such as insurance premiums and critical vendors. Payment of the pre-petition payroll wages have been approved by the Court and is moot.

51. Debtor denies the allegations in paragraph 53 to the extent that it assumes the Debtor is somehow in derelict of its duties. Debtor's secured creditor Mr. Barbaria the owner of the Debtor has consented to the use of cash collateral to pay post-petition operating expenses.

52. Debtor denies the allegations in paragraph 54. The payroll motion has been approved by the Court and objections to the same are moot.

53. Debtor denies the allegations in paragraph 55. As set forth above, Debtor has consent from its secured creditor to use cash collateral for post-petition operational expenses.

54. Debtor denies the allegations in paragraphs 56-62. The Debtor's evaluation of its Chapter 5 causes of action is set forth in its Plan Modification. These documents have been provided to the Trustee. The Debtor's plan proposes to appoint Mr. Christopher Moser as a "Plan Agent" for the

purpose of investigating these transfers to determine whether they are avoidable, and if so, to prosecute any such preferential transfers after confirmation of the Plan. Because Mr. Moser is an impartial third party known to the Court with extensive experience in avoidable transfer analysis and litigation, this resolves the Committee's objection and is not evidence of the need for a Trustee.

55.     Debtor admits the allegations in paragraph 63.

56.     Debtor admits the allegations in paragraphs 64-65 that the Committee requested an extension of deadlines but denies the characterization of its denial of the request. As explained to the Court at the hearing thereon, the Debtor was concerned about the late appointment of a committee because the Debtor had already filed its plan and disclosure statement and solicited the same to its creditors. In addition, Counsel for the Committee had been in the case all along as they previously represented committee member Sid Grinker Restoration, Inc. in its sole capacity as creditor. Therefore, it was Counsel for the Committee's delay that caused the last-minute request for extension of the confirmation hearing matters.

57.     Debtor denies the allegations in paragraphs 66-67.

58.     The allegations set forth in paragraphs 68-71 contain legal conclusions to which no response is required. To the extent a response is required Debtor denies the application of the law would require the appointment of a Trustee. Fed. R. Civ. P. 9 requires that in averments of fraud, the circumstances constituting fraud shall be stated with particularity. The Motion is devoid of any acts of Debtor that would indicate fraudulent intent of the Debtor. The Debtor denies the Committee's objections to the Plan are meritorious as set forth in its *Debtor's Response to Creditor Committee's Objection to Confirmation of Plan of Reorganization* (Dkt. 125.). The Debtor has made every effort to propose a Plan that uses the Debtor's resources to pay creditors as much as possible and allows it to remain in business for the future benefit of its employees and creditors,

with whom the Debtor will maintain relationships in the future. Again, the Class 4 Unsecured Claimants overwhelmingly voted to accept the Plan, which is a reliable indicator that the unsecured creditors, if not their appointed representatives, believe the Debtor is in good faith.

59. For all the reasons set forth above, Debtor denies the allegations in paragraph 72.

60. Debtor denies the allegations in paragraphs 73-77 for the reasons set forth above and in its *Debtor's Response to Creditor Committee's Objection to Confirmation of Plan Of Reorganization* (Dkt. 125).

61. Debtor denies the allegations in paragraphs 78-84 for the reasons stated above. There is no relationship with the Committee that rises to the level of acrimony as found in the cases cited about that would warrant the appointment of a Trustee.

62. Debtor denies the allegations in paragraphs 85-90. For the reasons set forth above no cause exists under 1104(a)(2) to appoint a trustee.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully prays that the Court enter an Order denying the Motion, and for such other and further relief to which Debtor may show itself to be justly entitled.

Dated: October 29, 2021.

Respectfully Submitted,

 */s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 29, 2021, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

Amish R. Doshi
amish@doshilegal.com

Guy H. Holman
guy@joycelindauer.com,
deann@joycelindauer.com;dian@joycelindauer.com;12112@notices.nextchapterbk.com;joyce@joycelindauer.com

Caleb T. Holzaepfel
caleb.holzaepfel@huschblackwell.com

James Wallace King
jking@offermanking.com

Buffey E. Klein
buffey.klein@huschblackwell.com, legalsupportteam-dreamteam-DAL@huschblackwell.com;tanya.adams@huschblackwell.com;buffey-klein-8494@ecf.pacerpro.com;ryan.weger@huschblackwell.com

Joyce W. Lindauer
joyce@joycelindauer.com,
dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Linda D. Reece
lreece@pbfcm.com

Nancy Sue Resnick
ustpregion06.da.ecf@usdoj.gov, nancy.s.resnick@usdoj.gov

Scott M. Seidel
scott@scottseidel.com, susan.seidel@earthlink.net;sms01@trustesolutions.net

United States Trustee
ustpregion06.da.ecf@usdoj.gov

                                                  */s/ Joyce W. Lindauer*
                                                  Joyce W. Lindauer