**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Electrotek Corporation, | ) | Case No. 21-30409-mvl-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Official Committee of Unsecured Creditors of Electrotek Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. _____ |
| | ) | |
| Electrotek Corporation and Dhirajal Babaria, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT TO DETERMINE THE VALIDITY, PRIORITY, AND EXTENT OF SECURED STATUS UNDER 11 U.S.C. § 506**

Plaintiff, the Official Committee of Unsecured Creditors of Electrotek Corporation (the "Committee"), by and through counsel, hereby files this Complaint to Determine the Validity, Priority, and Extent of Secured Status under 11 U.S.C. § 506 (the "Complaint") against Defendant Dhirajal Babaria ("Defendant Babaria") and Electrotek Corporation ("Debtor", and together with Defendant Babaria, collectively, the "Defendants"), and alleges as follows:

**NATURE OF ACTION**

1. Plaintiff brings this action to disallow or recharacterize certain scheduled secured claims of Defendant Babaria against the estate of Debtor Electrotek Corporation ("Debtor") as unsecured or invalid claims. This Complaint seeks a judgment from this Court as to the amount, validity, and characterization of Defendant Babaria's claims.

HB: 4854-5999-2576.2

## PARTIES

2. Plaintiff is the duly appointed Committee in the above-captioned Chapter 11 case, in accordance with the Appointment of the Official Unsecured Creditors' Committee filed by the U.S. Trustee on July 8, 2021.

3. Defendant Dhirajal Babaria is an individual person and resident of the State of Texas. Defendant may be served at 435 Shady Lane, Southlake, Texas 76092.

4. Defendant Electrotek Corporation is a corporation registered in the State of Wisconsin. Debtor's principal place of business is 7745 South 10th Street, Oak Creek, Wisconsin 53154. Debtor may be served via its registered agent Ahmad & Guerard, LLP, 4915 S. Howell Avenue, Suite 300, Milwaukee, Wisconsin 53207.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

6. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(A), (B) and (K), and the Court may enter final orders for the matters contained herein.

7. Plaintiff affirms its consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

9. This adversary proceeding is commenced pursuant to Rule 3007(b) and 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 506 of Title 11 of the United States Code ("Bankruptcy Code").

## CASE BACKGROUND

10. On March 8, 2021 (the "Petition Date"), Debtor, as debtor and debtor-in-possession in the above- referenced Chapter 11 case (the "Bankruptcy Case"), filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code and designated the Bankruptcy Case under Subchapter V.

11. Since the Petition Date, upon information and belief, Debtor continues to manage and operate their businesses as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

12. Debtor amended its Voluntary Chapter 11 Petition on April 15, 2021, to remove the Subchapter V designation.

## FACTS

13. On March 29, 2021, Debtor filed its *Schedules A/B and D-H* and its *Statement of Financial Affairs*. [Case No. 21-30409-mvl-11; Dkt. Nos. 21–22].

14. In Schedule D, Debtor asserts that Defendant Babaria is the thirty percent (30%) equity owner and Chief Executive Officer of Debtor and that Defendant Babaria holds a senior secured interest in the amount of $9.5 Million (the "Claim") in all of Debtor's assets. [*See* Case No. 21-30409-mvl-11; Dkt. No. 21, Schedule D, 2.1–2.3].

15. The Claim includes three separate obligations due and owing by the Debtor:

   i. $1,315,000 incurred on December 3, 2019, and secured by collateral valued at $7,162,990 (the "First Loan"); and

   ii. $1,685,000 incurred on January 28, 2020 and secured by collateral valued at $7,162,990 (the "Second Loan"); and

   iii. $6,500,000 incurred on August 6, 2020, and secured by collateral valued at $7,162,990 (the "Third Loan").

[*See id.*]

16. Debtor values its total assets as $7,106,644.84. [*See* Case No. 21-30409-mvl-11; Dkt. No. 21, Official Form 206Sum, Part 1].

17. No proof of claim is reflected in the claims register on behalf of Defendant Babaria.

18. To date, the Debtor has only provided the Committee with documents suggesting that Defendant Babaria funded, at most, $1.7 million of the Debtor's scheduled Claim amount, represented by the collective documents attached hereto and incorporated herein as **Exhibit A**, summarized as follows:

**TABLE 1:**

| Deposit Date | Deposit Method | Source | Amount |
|---|---|---|---|
| 8/26/2019 | Wire | Insider | $ 1,000,000[1] |
| 11/8/2019 | Check | Insider | $ 150,000[2] |
| 11/26/2019 | Wire | Insider | $ 100,000[3] |
| 2/26/2020 | Wire | Insider | $ 200,000[4] |
| 3/10/2020 | Wire | Insider | $ 250,000[5] |
| | | **TOTAL:** | **$ 1,700,000** |

18. Moreover, Defendant Babaria's deposits in the total amount of $450,000 in February 2020 and March 2020 are unsupported by any promissory note produced by Debtor to the Committee – and cannot be characterized as debt because no underlying obligation is evidenced.

19. Debtor also produced documents reflecting deposits to the Debtor with insufficient information to establish actual funding or that the funding was in fact made from various sources, other than the Defendant Babaria or Debtor's prior owner. These documents alone are insufficient

---

[1] *See* Exhibit A, at EC-033167–EC-033170.
[2] *See* Exhibit A, at EC-033171–EC-033172.
[3] *See* Exhibit A, at EC-033162–EC-033163.
[4] *See* Exhibit A, at EC-033161.
[5] *See* Exhibit A, at EC-033160.

to establish funding of the Debtor's Claim represented by the collective documents attached hereto and incorporated herein as **Exhibit B**, summarized as follows:

TABLE 2:

| Deposit Date | Deposit Method | Source | Amount | Committee Observations |
|---|---|---|---|---|
| 2/2/2015 | Check | Brad Winquist[6] | $500,000 | Incomplete bank records provided to Committee.[7] |
| 12/21/2018 | Check | Brad Winquist | $250,000 | No bank records provided to Committee.[8] |
| 1/4/2019 | Check | Brad Winquist | $200,000 | No bank records provided to Committee.[9] |
| 11/7/2018 | Check | Circuit Services Group, Inc. | $150,000 | Payment source other than Owner or Brad Winquist.[10] |
| 8/26/2019 | Wire | Insider | $600,000 | Payment was for ownership interest in Debtor and made payable to Brad Winquist, by and through counsel.[11] |
| 12/19/2019 | Wire | SVTronics, Inc. | $3,500,000 | Payment source other than Insider or Brad Winquist.[12] |
| 1/13/2021 | Wire | Electro Plate Circuitry, Inc. | $200,000 | Payment source other than Insider or Brad Winquist.[13] |
| | | **TOTAL:** | **$5,400,000** | |

20. Production to Committee also reflect flaws in the means by which the Defendant Babaria obtained his secured status.

21. The below is **Table 3**, which shows the date and nature of the produced documents that Debtor purports perfect the alleged Claim of Defendant Babaria (collectively, the "Loan and Security Documents"):

---

[6] Brad Winquist was the former equity owner of Debtor, who sold his equity interest in the Debtor to Insider in or about August 2019. *See* Exhibit A, at EC-033166; Exhibit B, at EC-001027–EC-10029.
[7] *See* Exhibit A, at EC-001078.
[8] *See* Exhibit A, at EC-001080.
[9] *See* Exhibit A, at EC-001080.
[10] *See* Exhibit A, at EC-001079.
[11] *See* Exhibit A, at EC-033166; Exhibit B, at EC-001027–EC-10029.
[12] *See* Exhibit A, at EC-001056–001057.
[13] *See* Exhibit A, at EC-033164-033165.

**TABLE 3:**

| Date | Document | Amount |
|---|---|---|
| 8/26/2019 | *Loan Purchase Agreement* from B. Winquist to Owner[14] | $1,100,000 |
| 12/3/2019 | *Promissory Note* from Electrotek, Corporation to Owner[15] | $1,315,000 |
| 12/3/2019 | UCC-1 Financing Statement[16] | |
| 1/29/2020 | *Promissory Note* from Electrotek Corporation to D. Barbaria[17] | $3,500,000 |
| 1/29/2020 | *Promissory Note* from Electrotek Corporation to D. Barbaria[18] | $3,000,000 |
| 1/29/2020 | *Security Agreement* from Electrotek Corporation to D. Barbaria[19] | |
| 1/28/2020 | UCC-1 Financing Statement[20] | |
| 3/10/2020; Recorded on 8/6/2020 | *Mortgage*[21] | $6,500,000 |

22. Wisconsin's Uniform Commercial Code (Wis. Stat. §§ 401 to 420) (the "UCC") provides the sole mechanisms by which Defendant Babaria could be perfected in Debtor's personal property.

23. A single Security Agreement between Defendant Babaria and Debtor dated January 29, 2020 (the "Security Agreement") exists.[22]

24. The Security Agreement defines the Debtor's collateral that it seeks to attach as follows:

---

[14] *See* Exhibit B, Bates Number EC-001027–EC-001029.
[15] *See* Exhibit B, Bates Number EC-001068–EC-001069.
[16] *See* Exhibit B, Bates Number EC-001071–EC-001073.
[17] *See* Exhibit B, Bates Number EC-001049–EC-001050.
[18] *See* Exhibit B, Bates Number EC-001058–EC-001059
[19] *See* Exhibit B, Bates Number EC-001060–EC-001064.
[20] *See* Exhibit B, Bates Number EC-001065–EC-001067.
[21] *See* Exhibit B, Bates Number EC-001044–EC-001048.
[22] *See* Exhibit B, Bates Number EC-001060–EC-001064

>   (a)  "**Collateral**" shall include the Debtor's interest, equity, ownership rights, fixtures, leasehold improvements, trade fixtures, equipment and other property owned by Debtor; all general intangibles relating to or arising from the Property, all cash and non-cash proceeds (including insurance proceeds) of the Property, all products thereof and all additions and accessions thereto, substitutions therefor and replacement thereof.

Security Agreement ¶ 1(a).

25. "Property" as used in ¶ 1(a) of the Security Agreement is not defined by the Security Agreement.

26. The Security Agreement defines the promissory note associated with the Security Agreement as follows:

>   (c)  "**Promissory Note**" means that certain Contract, dated as of the date hereof, made by [Electrotek Corporation] for the benefit of [Owner], in the original principal amount of Three Million Dollars ($3,000,000.00).

Security Agreement ¶ 1(c).

27. The Promissory Note as used in the Security Agreement reasonable references the *Promissory Note* from Electrotek Corporation to Defendant Babaria for Three Million and 00/100 Dollars ($3,000,000.00)[23] (the "3.0 Million Note").

28. The Security Agreement defines the obligation secured by the Collateral as follows:

>   (d) "**Obligations**" shall include all debts, liabilities, obligations, covenants and duties from [Electrotek Corporation] to [Defendant Babaria] of any kind or nature, present or future (including and interest accruing thereon after maturity or after the filings of any petition in bankruptcy, the commencement of any insolvency, reorganization or like proceeding relating to [Electrotek Corporation], whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), ***whether evidenced by or arising under the Note or this Agreement*** or, whether absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, and all costs and expenses of [Defendant Babaria] incurred in the enforcement, collection, or otherwise in connection with any of the foregoing, reasonable attorneys' fees and expenses.

Security Agreement ¶ 1(d) (emphasis added).

---

[23] *See* Bates Number EC-001058–EC-001059.

29. The Security Agreement ¶¶ 1(a), 1(c), and 1(d) shows that the Obligations of Debtor under the Security Agreement and Promissory Note may be limited to the $3.0 Million Note. *See* Security Agreement ¶ 1(d).

30. The $3 Million Note is unfunded by Defendant Babaria.

31. The Loan and Security Documents only serve to secure Defendant Babaria in the owned equipment of Debtor and the owned fixtures of Debtor, and only up to the amount actually funded by Defendant Babaria to Debtor.

32. Debtor's filed Schedule A/B denote the value of all equipment and all fixtures as $750,000. *See* Docket No. 17, Schedule A/B, Part 8, Question 40.

33. The Security Agreement does not attempt to perfect any interest of Defendant Babaria in any inventory, any deposit account, cash, accounts receivable, and/or personal property otherwise of Debtor.

## CAUSES OF ACTION

### COUNT I–DECLARATORY JUDGMENT AS TO ALL DEFENDANTS

33. Plaintiff repeats and realleges the allegations in all paragraphs above, as though fully set forth at length herein.

34. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

35. Upon information and belief, Defendant Babaria and Debtor asserts that Defendant Babaria has valid and enforceable lien secured by all assets of Debtor.

36. Based on the foregoing, an actual controversy exists under 28 U.S.C. § 2201.

37. Plaintiff is therefore entitled to a declaratory judgment of the rights and other legal relations as between the Debtor's estate and Defendant Babaria.

38. Plaintiff seeks an Order from this Court declaring as the amount, validity, and priority, and/or extent of Defendant Babaria's secured interest in the real property or personal property of Debtor.

39. A declaration as to the above-listed matters will put an end to the controversy. Accordingly, the controversy is ripe for determination.

### COUNT II–OBJECTION TO SECURED CLAIM OF DEFENDANT AS TO ALL DEFENDANTS

40. Plaintiff repeats and realleges the allegations in all paragraphs above, as though fully set forth at length herein.

41. Pursuant to 11 U.S.C. § 502(a) and Bankr. R. Fed. P. 3007(b), a party-in-interest may object to claim of Debtor.

42. Plaintiff is therefore entitled to a judgment of the amount and validity of the Claim.

43. Plaintiff seeks an Order from this Court determining and declaring the amount and validity of the Claim.

44. A declaration as to the above-listed matters will put an end to the controversy. Accordingly, the controversy is ripe for determination.

### RELIEF REQUESTED

WHEREFORE, the Plaintiff prays for judgment as follows:

A. Entry of a judgment against Defendants on all claims, respectively, finding and declaring that:

 (i) the scheduled Claim by Debtor of Defendant Dhirajal Babaria be disallowed in its entirety, or in the alternative,

 (ii) to allow a secured Claim of Defendant Dhirajal Babaria in the amount, extent, and validity of the funded debt and the perfected security interest of Defendant Dhirajal Babaria in the estate's assets, or in the alternative,

 (iii) to allow an unsecured Claim of Defendant Dhirajal Babaria in the amount, extent and validity of the funded debt of Defendant Dhirajal Babaria to the Debtor.

B. Such other relief as the Court may deem just and proper.

Dated: November 5, 2021

        Respectfully Submitted,

        **HUSCH BLACKWELL LLP**

  By: */s/ Caleb T. Holzaepfel*
    Buffey E. Klein
    Texas State Bar No. 24032515
    1900 N. Pearl, Suite 1800
    Dallas, TX 75201
    (214) 999-6100
    (214) 999-6170 (fax)
    buffey.klein@huschblackwell.com

    Caleb T. Holzaepfel (admitted *pro hac vice*)
    736 Georgia Avenue, Suite 300
    Chattanooga, TN 37402
    (423) 266-5500
    (423) 266-5499 (fax)
    caleb.holzaepfel@huschblackwell.com

    **COUNSEL FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ELECTROTEK CORPORATION**

HB: 4854-5999-2576.2